UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

KATHLEEN KINDELAN,
    Plaintiff,

v.                                                                                 C.A. No. 08-329-ML

DISABILITY MANAGEMENT
ALTERNATIVES, LLC,
UNITEDHEALTH GROUP SHORT
TERM DISABILITY PLAN,
    Defendants.

## MEMORANDUM AND ORDER

This matter is before the Court on cross motions for Summary Judgment (Docket # 24, 25) and Defendants' Motion to Strike Portions of Plaintiff's Motion for Summary Judgment, Statement of Facts and Related Exhibit (Docket # 38). For the reasons set forth below, Defendants' Motion to Strike is GRANTED in part and DENIED in part; Plaintiff's Motion for Summary Judgment is DENIED; and Defendants' Motion for Summary Judgment is GRANTED.

### I. STANDARD OF REVIEW

A motion for summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). A "'genuine' issue is one that could be resolved in favor of either party, and a 'material fact' is one that has the potential of affecting the outcome of the case." Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004) (quoting Anderson v. Liberty Lobby, Inc., 477

1

U.S. 242, 248-50 (1986)).

The moving party bears the burden of establishing that no genuine issues of material fact exist. National Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995). Once the moving party has made the requisite showing, the nonmoving party "may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in [the] rule – set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

The standard of review utilized by "the district court in [an] ERISA case differs in one important aspect from the review in an ordinary summary judgment case." Orndorf v. Paul Revere Life Ins. Co., 404 F.3d 510, 517 (1st Cir. 2005). Generally, the Court draws all reasonable inferences in the light most favorable to the nonmoving party. See Continental Casualty Co. v. Canadian Universal Ins. Co., 924 F.2d 370, 373 (1st Cir. 1991). "However, in an ERISA benefit-denial context, 'the district court sits more as an appellate tribunal than as a trial court.'" Cusson v. Liberty Life Assurance Co., 592 F.3d 215, 224 (1st Cir. 2010) (quoting Leahy v. Raytheon Corp., 315 F.3d 11, 18 (1st Cir. 2002). "'Summary judgment is simply a vehicle for deciding the issue,' and consequently, 'the non-moving party is not entitled to the usual inferences in its favor.'" Id. (quoting Orndorf, 404 F.3d at 517).

This standard "does not permit a district court independently to weigh the proof." Leahy, 315 F.3d at 18. Rather, the "district court must ask whether the aggregate evidence, viewed in the light most favorable to the non-moving party, could support a rational determination that the plan administrator acted arbitrarily in denying the claim for benefits." Id.

With these principles in mind, the Court considers the factual record and the parties' arguments.

## II. FACTS

Kathleen Kindelan ("Plaintiff") was employed by UnitedHealth Group, Inc. ("UnitedHeath") from November 29, 1993 until her resignation in 1998. On March 27, 2006, she resumed working for UnitedHeath as a full-time Clinical Care Manager. As a Clinical Care Manager, Plaintiff's job entailed "considerable walking and sitting" and traveling between her office and various hospitals to perform on-site reviews. Plaintiff was required to travel from "unit to unit" within a hospital with her computer so that she could enter data onsite and then return to the office to enter additional data. See Plaintiff's Ex. 13, p. 5-6.

On or before October 4, 2007,[1] Plaintiff withdrew from work because of an injury to her back and neck. On October 4, 2007, Plaintiff applied for Short Term Disability Benefits ("STD Benefits") under the UnitedHealth Group Short Term Disability Plan (the "STD Plan"). UnitedHealth engaged Disability Management Alternatives, LLC ("DMA"), an unrelated third party administrator, to make claim determinations under the STD Plan.

Initially, DMA approved Plaintiff's claim. Then, on October 24, 2007, Plaintiff was notified that her claim was denied. Plaintiff appealed DMA's determination on November 28, 2007. On February 21, 2008, Plaintiff was informed that DMA's decision to deny Plaintiff's application for STD Benefits was upheld. After exhausting her administrative remedies, Plaintiff commenced this action for judicial review on August 29, 2008.

A. <u>Plaintiff's Medical History and the October 2007 "Flare Up"</u>

Prior to her employment at UnitedHealth, Plaintiff had an extensive history of chronic

---

[1] Neither party provides the exact date that Plaintiff withdrew from work. The Court assumes that it was on or before October 4, 2007, when Plaintiff applied for STD benefits.

3

back and neck problems dating back to 1979.[2] Plaintiff had undergone a series of surgeries that provided intermittent relief – the last surgery was a "lumbar interbody fusion" performed in October of 2005. By January of 2006, Plaintiff had recovered from the "lumbar interbody fusion" and was able to return to work.

According to Dr. Palumbo's notes, Plaintiff continued to do "reasonably well" and "tolerated her work related duties without major difficulties" for the twenty months following the October 2005 procedure, that is from January 2006 through September 2007. Then, on October 3, 2007, Plaintiff returned to Dr. Palumbo "with a recent flare of her back pain and lower extremity symptoms" (the "October 3, 2007 Visit"). Plaintiff's Ex. 5, p. 3. Dr. Palumbo's notes indicate that Plaintiff reported "major and increased difficulties with tolerating her work related duties." Id. His notes go on to state as follows –

> On examination [Plaintiff] is somewhat agitated today and anxious. Her gait pattern is slow, but normal. She does have moderate restriction of lumbar flexion and extension with exacerbation of back pain. There is no motor weakness in the lower extremities. Her nerve root tension signs are mildly positive/equivocal.

Id. Dr. Palumbo recommended that Plaintiff should "come out of the work force for a period of four to six weeks. Hopefully the reduced stress will reduce her symptomatology." Id. Dr. Palumbo advised Plaintiff to "utilize a home exercise program and consider the use of non-steroidal anti-inflammatory medication for her pain symptomatology." Id.

Plaintiff did not return to work after the October 3, 2007 Visit. On November 13, 2007, Plaintiff returned to Dr. Palumbo for a follow-up assessment of her back and lower extremity

---

[2] Plaintiff began treating with Dr. Mark Palumbo, of University Orthopedics, in 1996. To support Plaintiff's claim for STD Benefits, Dr. Palumbo faxed Christina Kozlowski, a case manager at DMA, Plaintiff's medical charts. DMA relied upon Dr. Palumbo's medical charts to determine whether Plaintiff was eligible for STD Benefits under the STD Plan. The parties also rely on those charts to chronicle Plaintiff's medical history.

pain (the "November 13, 2007 Visit"). During this visit, Dr. Palumbo noted that Plaintiff had "not had much in the way of improvement in her symptoms" since her last visit. Plaintiff's Ex. 7, p. 3. Plaintiff reported that she had exacerbated symptoms when she stood or walked for a prolonged period of time. Dr. Palumbo determined that Plaintiff had

> residual symptomatology which signifigantly limits her capacity to participate in gainful employment on a full time basis. With this in mind, it is my opinion that she is totally disabled from work on a permanent basis. She will be applying for social security disability benefits in the near future.

Id.

B.  The UnitedHealth Short Term Disability Plan

As an employee of UnitedHealth, Plaintiff was enrolled in the STD Plan. The STD Plan is governed by the provisions of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001 et seq. ("ERISA"). Plaintiff's Ex. 3, p. 4. The STD Plan provides that "UnitedHealth Group, and any other persons or entities to whom UnitedHealth Group delegates fiduciary authority, has the sole and exclusive authority and discretion to interpret the plans' terms and benefits under them, and to make factual and legal decisions about them." Id.

In accordance with this provision, UnitedHealth entered into a Master Services Agreement with DMA, which authorizes DMA to make claim determinations under the STD Plan. The Master Services Agreement grants DMA the discretionary authority to "(i) construe and interpret the terms of the Plans; and (ii) make final, binding determinations regarding the availability of benefits under the Plans." Defendants' Ex. C, p. 2.

The STD Plan provides that an individual is "Disabled" when she is "unable to perform with reasonable continuity the Material Duties of [her] Own Occupation because of a non-work related Medical condition." Plaintiff's Ex. 3, p. 18. The STD Plan further provides that an individual is "Disabled" when all of the following conditions are met –

    - You have been seen face-to-face by a Physician about your Disability within 10 business days of the first day of absence related to the Disability leave of absence;
    - Your Physician has provided Medical Evidence that supports your inability to perform the Material Duties of your Own Occupation;
    - You are under the Regular and Appropriate Care of a Physician; and
    - Your Medical Condition is not work-related and is a Medically Determinable Impairment.

Id. at 10. The STD Plan also lists disabilities that are *not* covered, including conditions that

    cannot be verified and measured using generally accepted standard medical procedures and practices. These conditions are commonly referred to as *self-reported conditions* and include but are not limited to headaches, dizziness, fatigue, loss of energy, pain and upper extremity cumulative trauma disorder.

Id. at 14 (emphasis added).

C.    Plaintiff's Application for STD Benefits

Plaintiff applied for STD Benefits on October 4, 2007. To support Plaintiff's application, Dr. Palumbo faxed Plaintiff's medical charts to DMA. Those charts consisted of Dr. Palumbo's notes from November 27, 1996 through September 25, 2007. See Plaintiff's Ex. 4. Plaintiff's application was initially approved for the period October 1, 2007 through October 15, 2007. Plaintiff's Ex. 9. Then, on October 22, 2007, DMA Case Manager Christina Kozlowski contacted Dr. Palumbo and requested additional medical evidence. On that same day, Dr. Palumbo faxed Kozlowski his medical notes from the October 3, 2007 Visit.

By letter dated October 24, 2007, Plaintiff was notified that her claim for STD Benefits was denied. Plaintiff's Ex. 10. The letter explained that the STD Plan does not pay benefits for "self-reported conditions" that "cannot be verified and measured using generally accepted standard medical procedures and practices." Id. The letter advised Plaintiff that if she disagreed with the determination, she could appeal the decision within 180 days of the date that she received the letter. The letter also advised Plaintiff that if she elected to appeal the determination, her

6

appeal should include a "detailed narrative report from [her] physician from October 1, 2007 through present..." and any other documentation that may assist DMA in reviewing her claim. Id.

D.      Plaintiff's Appeal of the Denial of her STD Claim

On November 28, 2007, Plaintiff appealed DMA's decision. Plaintiff's Ex. 12. To supplement her appeal, Dr. Palumbo's office faxed Kozlowski his notes from the November 13, 2007 Visit. Plaintiff's Ex. 7.

On February 21, 2008, DMA sent Plaintiff a letter informing her that DMA's decision to deny her claim for STD Benefits was upheld. Plaintiff's Ex. 17. The letter explained that Dr. Amy Hopkins, Board Certified in Internal Medicine and Occupational & Environmental Medicine, had performed an "independent medical file review on February 18, 2008 and determined that [Plaintiff's] medical records do not support an inability to perform [her] required job duties as of October 1, 2007." Plaintiff's Ex. 17, p. 3.

According to Dr. Hopkins,

> You were doing well in 2006 and most of 2007. You have chronic right lower extremity pain, which was relieved with Lyrica. You reported a flare of [your] back and leg symptoms in October 2007 attributable both to work and psychological stress. You did not provide any information about what might have changed either at work or at home. You attributed the symptoms to work, but your symptoms did not improve being out of work, which makes the connection more tenuous. The only change in treatment was a home exercise program and a nonsteroidal anti-inflammatory medication.... There was no mention of treatment for and recovery from an acute flare. There was no mention of what activities you were doing at home and what functionality you reported.... Dr. Palumbo ordered x-rays of the lumbar spine, which were unremarkable, but no further testing, such as [an] MRI, to explain this sudden change in your condition.

Id. at 3-4. By letter dated May 15, 2008, Plaintiff was informed that DMA's denial of her STD Benefits claim made her ineligible for long-term disability benefits. Plaintiff's Exhibit 19.[3]

---

[3] Defendants filed a Motion to Strike from the Record (1) Section II(A)(2) of Plaintiff's Motion for Summary Judgment entitled "Dr. Amy Hopkins' Previous Reviews," (2) Facts 50-54 in Plaintiff's Statement of Undisputed Facts, and (3) Plaintiff's Exhibit 20, which contains Stipulated Facts concerning Dr. Hopkins from a

## III. APPLICABLE STANDARD OF REVIEW UNDER ERISA

The parties disagree about the applicable standard of review for Plaintiff's STD Benefits claim. Defendants argue that the "arbitrary, capacious or an abuse of discretion" standard of review should apply. Plaintiff, however, urges this Court to apply a heightened standard of review based on her contention that there was a conflict of interest between UnitedHealth and DMA.

A. "Arbitrary, Capricious or Abuse of Discretion" Standard

An administrator's denial of STD Benefits eligibility is generally reviewed under a *de novo* standard. Thompson v. Coca-Cola Co., 522 F.3d 168, 175 (1st Cir. 2008). When an ERISA plan gives the administrator discretion to determine eligibility for benefits, as in this case,[4] the reviewing court must uphold the decision unless it is "arbitrary, capricious, or an abuse of

---

2006 case in the Central District of California.
    Defendants emphasize that Section II(A)(2) of Plaintiff's Motion for Summary Judgment is based on cases from other jurisdictions that are unrelated to this case. Defendants argue that those facts are not relevant or admissible in this case, because they were not part of the administrative record. In response, Plaintiff argues that the evidence is relevant because Defendants have held Dr. Hopkins out to the Court as an "independent file reviewer." Plaintiff contends that she should, therefore, be permitted to establish that Dr. Hopkins was biased in favor of UnitedHealth.
    While ERISA cases are typically adjudicated on the record, "courts have permitted only modest, specifically targeted discovery" to address a conflict of interest. Denmark v. Liberty Life Assurance Co., 566 F.3d 1, 10 (1st Cir. 2009). This discovery must be "narrowly tailored so as to leave the substantive record essentially undisturbed." Id. The Court concludes that Facts 50-53 from Plaintiff's Statement of Undisputed Facts are not relevant and are beyond the scope of specifically targeted discovery in this case. Defendants' Motion to Strike Plaintiff's facts 50-52, Exhibit 20, and Section II(A)(2) of Plaintiff's Motion for Summary Judgment is therefore granted.
    The Court denies Defendants' Motion to Strike, however, on Plaintiff's Facts 53 and 54. These facts contain the financial arrangement between DMA and Dr. Hopkins. This evidence is relevant to this case, because it pertains to Plaintiff's claim of Dr. Hopkins' potential bias.
    Finally, this Court notes that even if it had denied Defendants' Motion in its entirety, the extraneous cases Plaintiff relies on would not be outcome determinative, as this Court discusses in Section IV.E.

[4] The STD Plan provides that "UnitedHealth Group, and any other persons or entities to whom UnitedHealth Group delegates fiduciary authority, has the <u>sole and exclusive authority and discretion</u> to interpret the plans' terms and benefits under them, and to make factual and legal decisions about them." Plaintiff's Ex. 3, p. 4 (emphasis added).

discretion." Cusson, 592 F.3d at 224 (citing Gannon v. Metro. Life Ins. Co., 360 F.3d 211, 213 (1st Cir. 2004)).

Under this "generous standard," the Court inquires into whether Defendants' decision was "reasoned and supported by substantial evidence." Medina v. Metro. Life Ins. Co., 588 F.3d 41, 45-46 (1st Cir. 2009). "Put differently, [the Court] will uphold [Defendants'] decision to deny disability benefits if 'there is any reasonable basis for it.'" Id. (quoting Wallace v. Johnson & Johnson, 585 F.3d 11, 14-15 (1st Cir. 2009).

B.    "Conflict of Interest" Standard of Review

Plaintiff argues that a heightened version of the "arbitrary, capricious, or abuse of discretion" standard of review applies in this case because the financial arrangement between UnitedHealth and DMA created a structural conflict. The Court recognizes that this conflict of interest analysis involves a "newly refined standard" – it therefore briefly rehearses the evolution of recent case law. Denmark, 566 F.3d at 8.

The Supreme Court elucidated the applicable standard of review in an ERISA case involving a structural conflict. Met. Life Ins. Co. v. Glenn, 128 S. Ct. 2343, 2346 (2008). In Glenn, Metropolitan Life Insurance Co. served as both the plan administrator and the insurer of Sears, Robebuck & Co.'s long-term disability insurance plan. The plan granted Metropolitan Life Insurance Co. the "discretionary authority to determine whether an employee's claim for benefits is valid; it simultaneously provide[d] that Metlife (as insurer) [would] itself pay valid benefit claims." Id. at 2346. The Supreme Court held that where –

> the entity that administrates the plan, such as an employer or insurance company, both determines whether an employee is eligible for benefits and pays benefits out of its own pocket[,] ...this dual role creates a conflict of interest; a reviewing court should consider that conflict as a factor in determining whether the plan administrator has abused its discretion in denying benefits; and the significance of the factor will depend upon the

9

circumstances of the particular case. Id. The Supreme Court added that it did not mean to imply a change in the standard of review, "say, from deferential to *de novo* review," because "conflicts are but one factor among many that a reviewing judge must take into account." Id. at 2351, 2356.

The First Circuit had the opportunity to apply the newly refined standard from Glenn in Denmark v. Liberty Life Ins. Co., 566 F.3d 1 (1st Cir. 2009), where Liberty Life Ins. Co. both evaluated the benefits claims and paid for the benefits. The First Circuit opined that after Glenn, courts are "duty-bound to inquire into what steps a plan administrator has taken to insulate the decisionmaking process against the potentially pernicious effects of structural conflict." Id. at 20-21. Moreover, "in cases in which a conflict has in fact infected a benefit-denial decision, such a circumstance may justify a conclusion that the denial was itself arbitrary and capricious (and thus, an abuse of discretion)." Id.

More recently, the First Circuit considered the Glenn holding in Cusson v. Liberty Life Assurance Co., 592 F.3d 215 (1st Cir. 2010). In Cusson, Liberty served as both the administrator and payer of the LTD benefits plan. Id. at 223. The Court acknowledged that "[a]lthough the presence of a conflict of interest does not change the standard of review in this case, the conflict can itself, under certain circumstances, be accorded extra weight in the court's analysis. Id. at 224. The court noted that the employee bears the burden of showing that the conflict influenced the arbitrator's decision. Ultimately, the Court determined that Cusson had failed to show that Liberty was improperly influenced by the conflict. Liberty's decision to terminate Cusson's benefits was therefore affirmed. Id.

C. Applicable Standard of Review in this Case

The threshold question before the Court is whether the facts of this case create a structural

10

conflict. If the Court determines that no structural conflict exists, it will apply the traditional "arbitrary, capricious or abuse of discretion standard." Cusson, 592 F.3d at 224. If, however, the Court accepts Plaintiff's allegation that a structural conflict existed between UnitedHealth and DMA, it will "consider that conflict as a *factor*" in determining whether DMA abused its discretion in denying Plaintiff's claim. Glenn, 128 S. Ct. at 2351 (emphasis added).

Plaintiff contends that there is a structural conflict in this case because UnitedHealth paid DMA a significant amount of money to administer the plan and that that financial agreement motivated DMA to "slant" its decisions in UnitedHealth's benefit. Plaintiff was given the opportunity to conduct limited jurisdictional discovery on this very issue. The discovery revealed that DMA received a substantial portion of its annual gross income from UnitedHealth in 2007. The discovery revealed that Dr. Hopkins also earned a substantial amount of money from DMA for her services in 2007, but the discovery did not indicate what percentage of her total annual income that amount represented.[5]

As the First Circuit explained in Cusson, the employee bears the burden of establishing that a conflict exists and that that conflict influenced the decision to deny benefits. Cusson, 592 F.3d at 225. Plaintiff has not met her burden here. The financial arrangement between UnitedHeath and DMA is far different from the structural conflicts found in Glenn, Denmark, and Cusson. In all three of those cases, the structural conflict arose because the plan administrator both evaluated the claim and paid the benefits of the insurance plan. See also Colby v. Assurant Employee Benefits, 603 F. Supp 2d 223, 236 (D. Mass. 2009); Frost v. Hartford Life Ins. Co., Civ. No. 09-sv-120-SM, 2010 D.N.H. 17 (D.N.H. Jan. 28, 2010).

---

[5] The Court is aware of the dollar amounts involved, however, because the discovery is subject to a protective order which this Court will not disturb, the Court uses the descriptor "substantial."

11

Here, while UnitedHealth contracted with DMA to serve as the plan administrator and to make STD Benefits eligibility determinations, it paid the STD Benefits. As the plan administrator, DMA interprets the terms of the plan and makes the "final, binding determinations regarding the availability of benefits under the Plans." Defendants' Ex. C. Moreover, DMA engaged Dr. Hopkins to perform an "independent medical file review." Plaintiff's Ex.17, p. 3. Dr. Hopkins is not an employee of DMA; she is an independent contractor paid by DMA on a per-review basis to conduct reviews. These facts are not sufficient to establish a structural conflict. The appropriate standard of review to be applied here is therefore the traditional "arbitrary, capricious, or abuse of discretion" standard without regard to any claim of conflict of interest. Cusson, 592 F.3d at 223.

## IV. DISCUSSION

The Court must now determine whether Defendants' denial of Plaintiff's claim for STD Benefits was "arbitrary, capricious, or an abuse of discretion." Plaintiff argues that DMA's reliance on Dr. Hopkins' decision does not satisfy this standard because Dr. Hopkins ignored Plaintiff's substantial medical history and mis-characterized Dr. Palumbo's medical records and recommended treatment plan. In response, Defendants argue that both DMA and Dr. Hopkins conducted careful reviews of Plaintiff's claim and made a reasonable decision that Plaintiff did not qualify for STD Benefits.

A.  "Disability" and "Self-Reporting Condition"

Plaintiff argues that DMA lacked a reasonable basis for denying her claim for STD Benefits. In response, Defendants contend that DMA did not abuse its discretion because (1) Plaintiff failed to establish that she was "Disabled" as defined by the STD Plan and (2) her condition was excluded under the STD Plan as a "self-reporting condition."

12

First, the Court addresses Defendants' contention that DMA and Dr. Hopkins were reasonable in their conclusions that Plaintiff's condition did not satisfy the definition of "Disabled" under the STD Plan. The STD Plan provides that an individual is "Disabled" when she is "unable to perform with reasonable continuity the Material Duties of [her] Own Occupation because of a non-work related Medical condition." Plaintiff's Ex. 3, p. 18.

Plaintiff argues that she was "Disabled" under the STD Plan, because her condition prevented her from performing the "considerable walking and sitting" and traveling from "unit to unit" within a hospital that her job entailed. Plaintiff's Ex. 13, p. 5-6. Dr. Palumbo's report does not, however, establish with any specific medical evidence that Plaintiff's condition prevented her from fulfilling those duties. The Court, therefore, finds that Defendants did not abuse their discretion in concluding that Plaintiff did not satisfy the definition of "Disabled" under the STD Plan.

Second, Defendants argue that their denial of Plaintiff's claim for STD Benefits was not an abuse of discretion because her injury was excluded under the STD Plan as a "self-reporting condition." The STD Plan lists conditions that are not "Disabilities" under the STD Plan. Plaintiff's Ex. 3. That list includes "self-reporting conditions." Id. at 14. "Self-Reporting conditions ... cannot be verified and measured using generally accepted standard medical procedures and practices." They include, but are not limited to, "headaches, dizziness, fatigue, loss of energy, pain and upper extremity cumulative trauma disorder." Id.

A close look at Dr. Palumbo's medical reports from Plaintiff's October 3, 2007 and November 13, 2007 visits supports the conclusion that Plaintiff's injury was a "self-reporting condition." In both reports, Dr. Palumbo relied on Plaintiff's own account of her pain and symptoms. He did not verify her symptoms with generally accepted medical practice. For

13

example, Dr. Palumbo's notes from the October 3, 2007 Visit indicate that Plaintiff appeared "distressed," was "somewhat agitated... and anxious," and was "finding major and increasing difficulties with tolerating her work related duties." Plaintiff's Ex. 5, p. 3. Other than a physical examination which revealed that Plaintiff's "gait pattern [was] slow but normal" and "moderate restriction of lumbar flexion and extension with exacerbation of back pain," Dr. Palumbo did not verify that the reported symptoms were caused by a medical condition. Id.

Dr. Palumbo's notes from the November 13, 2007 Visit further support the conclusion that Plaintiff's injury was a "self-reporting condition" not substantiated by medical evidence. Those notes reveal that Plaintiff had "not had much in they way of improvement in her symptoms" since the last visit, and continued to be "afflicted by significant back pain, but particularly right leg pain." Plaintiff's Exhibit 7, p. 3. Based on that report from Plaintiff, Dr. Palumbo concluded that Plaintiff was "totally disabled from work on a full time basis." Id.

As Dr. Hopkins' report emphasizes, Dr. Palumbo did not provide any information about what might have "changed either at work or at home" to cause Plaintiff's "flare up," nor did he provide medical evidence to explain Plaintiff's sudden "flare up." See Plaintiff's Ex. 17, p. 3 ("Dr. Palumbo ordered x-rays of the lumbar spine, which were unremarkable, but no further testing, such as [an] MRI, to explain this sudden change in [her] condition."). The Court, therefore, finds that DMA did not abuse its discretion in concluding that Plaintiff was not "Disabled" and that her claimed injury was a "self-reporting condition" as defined by the STD Plan.

B.     Dr. Hopkins' Review of Plaintiff's Medical History

Plaintiff contends that Dr. Hopkins review was arbitrary because she ignored Plaintiff's extensive medical record. There is little doubt that Plaintiff's history of back, neck, and leg problems was extensive. The issue, however, is whether Plaintiff's medical history was sufficient

to establish that her October 2007 "flare up" was a "Disability" under the STD Plan.

After Plaintiff's "lumbar interbody fusion" in October of 2005, Plaintiff was "doing reasonably well" for 2006 and most of 2007. Plaintiff's Ex. 4, p. 10. By January of 2006, Plaintiff had recovered from the "lumbar interbody fusion" and was able to return to work. For the next twenty months, from January of 2006 through September of 2007, Dr. Palumbo found that Plaintiff continued to do "reasonably well" and "tolerated her work related duties without major difficulties." It was only after that period of twenty months that Dr. Palumbo indicated that Plaintiff had a "recent flare of her back pain and lower extremity symptoms" and "needed to come out of the work force for four to six weeks." Plaintiff's Ex. 5, p. 3.

The Court finds that both DMA and Dr. Hopkins acknowledged Plaintiff's extensive medical history and were reasonable in their conclusion that her medical history alone would not support a finding that Plaintiff was "Disabled" under the STD Plan. Given the history of twenty months of doing "reasonably well" between when Plaintiff had recovered from her October 2005 procedure and her October 2007 "flare up," Defendants did not abuse their discretion when they denied Plaintiff's claim for STD Benefits.

C.  Dr. Palumbo's Treatment Recommendation

Plaintiff argues that Dr. Hopkins unreasonably faulted Dr. Palumbo for failing to recommend a specific treatment plan. Dr. Hopkins summarized Dr. Palumbo's treatment plan as follows – "The only change in treatment was a home exercise program and a nonsteroidal anti-inflammatory medication... There was no mention of treatment for and recovery from an acute flare. There was no mention of what activities [Plaintiff was] doing at home and what functionality [she] reported." Plaintiff's Ex. 17, p. 3.

This Court has reviewed the medical notes that Dr. Palumbo sent to DMA and finds that

Dr. Hopkins' characterization of Dr. Palumbo's treatment plan was accurate. In Dr. Palumbo's report from the October 3, 2007 Visit, Dr. Palumbo wrote that he had "advised [Plaintiff] to utilize a home exercise program and consider the use of non-streodial anti-inflammatory medicine for her pain symptomatology." Plaintiff's Ex. 5, p. 3. The Court therefore concludes that Dr. Hopkins acted reasonably in basing her findings on Dr. Palumbo's failure to recommend a specific treatment plan to Plaintiff in October of 2007.

D.   Award of Benefits by the SSA

Plaintiff contends that the Social Security Administration's determination that she was eligible for Social Security Disability benefits demonstrates that DMA's denial of her STD Benefits was unreasonable. The First Circuit has held, however, that "benefits eligibility determinations by the Social Security Administration are not binding on disability insurers." Pari-Fasano v. ITT Hartford Life & Accident Ins. Co., 230 F.3d 415, 420 (1st Cir. 2000). This is because the "criteria for determining eligibility for Social Security disability benefits are substantively different than the criteria established by many insurance plans." Id. Consequently, the fact that Plaintiff was awarded Social Security disability benefits is one factor that may weigh in her favor, but it is not given controlling weight. It therefore does not overcome the mountain of support that weighs in favor of Defendants' denial of Plaintiff's STD Benefits.

E.   Evidence Subject to Defendants' Motion to Strike

The Court granted Defendants' Motion to Strike Portions of Plaintiff's Motion for Summary Judgment, Statement of Facts 50-52, and Supporting Exhibits involving cases from other jurisdictions where Dr. Hopkins served as the independent medical reviewer. Even if the Court had denied Defendants' Motion in its entirety and were to consider the underlying evidence, the

outcome would not change.

Plaintiff cites a myriad of cases from other jurisdictions in an attempt to establish that Dr. Hopkins was biased against Plaintiff in this case. Most notably, Plaintiff cites Petroff v. Verizon North, Inc., Civ. No. 02-318, 2004 WL 1047896 ( W.D. Pa. May 4, 2004). In Petroff, the court concluded that a heightened degree of scrutiny should be applied because of "Dr. Hopkins' selective 'pick and choose' approach in reviewing the medical records in the case." Id. at 13 ("Tellingly absent from Dr. Hopkins' report is a reference to Dr. Babins' *complete* office note...").

The facts of this case are distinguishable from the facts of the Petroff decision and the other cases cited by Plaintiff. Here, Dr. Hopkins did not employ a 'pick and choose' approach to Plaintiff's medical records. Dr. Palumbo's notes from Plaintiff's October 3, 2007 and November 13, 2007 visits are so deplete of medical evidence and a specific treatment plan, that Dr. Hopkins had nothing to 'pick and choose' from. Dr. Palumbo's notes reveal a self-reported injury, a generic treatment plan and no medical documentation, such as an MRI, to explain the "sudden change in [Plaintiff's] condition." Plaintiff's Ex. 17, p. 3-4. Accordingly, even if the Court had denied Defendants' Motion to Strike in its entirety, the Court would still conclude that Defendants' denial of Plaintiff's application for STD Benefits was not an abuse of discretion.

F.      Plaintiff's Assertion of Defendants' Procedural Error

In addition to Plaintiff's contention that UnitedHealth abused its discretion in denying her application for STD Benefits, Plaintiff argues that DMA violated her right to rebut Dr. Hopkins' statements before her application was denied. In response, Defendants contend that DMA gave Plaintiff ample opportunity to submit additional information to support her claim for STD Benefits during both the initial determination phase and the appeal process.

> 9 C.F.R. § 2560.503-1(h)(2)(ii) provides –
>
> (h) Appeal of adverse benefit determinations.
>
>> (1) In general. Every employee benefit plan shall establish and maintain a procedure by which a claimant shall have a reasonable opportunity to appeal an adverse benefit determination to an appropriate named fiduciary of the plan, and under which there will be a full and fair review of the claim and the adverse benefit determination.
>>
>> (2) Full and fair review. Except as provided in paragraph (h)(3) and (h)(4) of this section, the claims procedures of a plan will not be deemed to provide a claimant with a reasonable opportunity for a full and fair review of a claim and adverse benefit determination unless the claim procedures –
>> ... (ii) Provide claimants the opportunity to submit written comments, documents, records, and other information relating to the claim for benefits...

The issue is therefore whether Plaintiff had a "reasonable opportunity" to appeal her adverse benefits determination, including the opportunity to supplement her application with additional information relating to her claim.

Plaintiff was provided with several opportunities to appeal and supplement her original application. First by letter dated October 24, 2007, Plaintiff was notified that her claim for STD Benefits was denied. Plaintiff's Ex. 10, p. 2. In that letter, Plaintiff was notified that she had the opportunity to appeal in writing within 180 days from the date that she received the letter, and that her appeal should include her physician's reports and any other documentation that she deemed helpful for DMA's review. Id. Then again in a letter dated November 5, 2007, Plaintiff was notified that after a review of her claim, the denial had been affirmed, but that she could file an appeal within 180 days of the date that she received the letter. Plaintiff's Ex. 11.

In fact, Plaintiff elected to appeal DMA's decision and she did supplement her application with Dr. Palumbo's report from the November 13, 2007 Visit. Plaintiff's Ex. 7, p. 3. In addition, Dr. Palumbo discussed Plaintiff's condition directly with Dr. Hopkins. This Court therefore

concludes that not only was Plaintiff given ample opportunity to appeal DMA's decision, but she was also sufficiently informed that she could supplement her application with additional evidence and she actually took full advantage of those opportunities.

### V. CONCLUSION

For the reasons detailed above, this Court finds that Defendants' decision to deny Plaintiff's application for STD Benefits was not "arbitrary, capricious, or an abuse of discretion." Defendants' Motion to Strike is GRANTED in part and DENIED in part; Plaintiff's Motion for Summary Judgment is DENIED; and Defendants' Motion for Summary Judgment is GRANTED.

SO ORDERED.

*Mary M. Lisi*

Mary M. Lisi
Chief United States District Judge
April 20, 2010